IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNY M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 8322 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security, [1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

In August 2015, the claimant, Johny M. ("Plaintiff"),[3] filed a *pro se* application for Disability Insurance Benefits, alleging disability beginning on May 1, 2015. (R. 175.) After his claim was denied initially and on reconsideration, Plaintiff sought and received a hearing before an administrative law judge ("ALJ"). Plaintiff appeared with counsel at the hearing in July 2017,

---

[1] The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On March 25, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 22.) On August 22, 2019, this case was reassigned to this Court for all proceedings. (D.E. 30.)

[3] The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. (The Court notes that the district court judge in this case also granted Plaintiff's motion to seal (D.E. 8) "to the extent necessary to prevent personal identifiers from appearing on the docket" (D.E. 12).) In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated.

and on December 15, 2017, the ALJ issued a written opinion denying his application for benefits. (R. 9.) On October 29, 2018, the Appeals Council denied Plaintiff's request for review (R. 1), making the ALJ's decision the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

**I.    Plaintiff's Medical Record**

On May 1, 2015, Plaintiff underwent back surgery to repair a large disc herniation in his lower back that was causing him severe pain. (R. 291.) The surgical repair was successful, but on June 1, 2015, Plaintiff developed severe left leg pain despite taking Norco (a narcotic), and the pain made him depressed. (R. 291, 529-30.) In addition to Norco, his physician prescribed gabapentin (for nerve pain) and Lexapro (for depression). (R. 530.) Diagnostic testing to determine the source of Plaintiff's pain, including EMGs and MRIs of his back, were unremarkable.[4] In October 2015, Plaintiff also had pain in the bottoms of his feet, leaving Plaintiff's neurosurgeon, Edward Mkrdichian, M.D., "at a loss . . . about where [Plaintiff's] symptoms were coming from." (R. 285, 512-13.) In addition to Norco and gabapentin, Plaintiff took valium (a sedative) and Flexeril (a muscle relaxant) to treat his pain. (*Id*.) On February 25, 2016, Plaintiff underwent an epidural steroid injection in his lower back to address his severe pain. (R. 549.) On March 1, 2016, a non-examining state agency consultant opined that Plaintiff had a severe spine disorder, but that he could perform light work with some additional postural limitations. (R. 86-90.)

On February 10, 2016, Plaintiff underwent a psychological evaluation in connection with his disability claim. (R. 544.) Plaintiff reported that he hated his life because his back pain was so severe he could not work. (*Id*.) The state agency examiner found Plaintiff had depression secondary

---

[4]EMG (electromyography) measures the electrical activity within muscles to assess their health and the health of the nerve cells that control them. https://www.mayoclinic.org/tests-procedures/emg/about/pac-20393913. MRI (magnetic resonance imaging) "uses a magnetic field and computer-generated radio waves to create detailed images of the organs and tissues" in a person's body. https://www.mayoclinic.org/tests-procedures/mri/about/pac-20384768.

2

to his general medical condition. (R. 547.) Based on this examination, a non-examining state agency consultant opined Plaintiff did not have a severe mental impairment. (R. 83-87.)

On May 9, 2016, Plaintiff followed up with Dr. Mkrdichian. (R. 761.) Plaintiff reported that despite taking his prescribed pain medications, he continued to have pain and numbness primarily in his left leg and foot. (*Id.*) Plaintiff was also taking amitriptyline to treat his depression. Dr. Mkrdichian noted that treatment options were limited: in addition to refilling his pain medications, Plaintiff could try more epidural steroid injections or a spinal cord stimulator. (*Id.*)

On June 6, 2016, physical therapist Tamara Sedenkov conducted a two-hour Functional Capacity Evaluation ("FCE") of Plaintiff. (R. 794.) Ms. Sedenkov reported that Plaintiff showed significantly decreased functional abilities -- including greatly decreased lumbar spine range of motion, decreased left knee extension and slow, guarded movements -- primarily due to self-limiting pain behavior (*i.e.*, Plaintiff would discontinue tasks due to increased pain). (R. 794-95.) Because Plaintiff did not complete all the tests due to pain, Ms. Sedenkov wrote that she was unable to objectively evaluate the extent that his pain limited his ability. (R. 795.) Ms. Sedenkov opined that Plaintiff demonstrated a physical demand level of sedentary to light, while Plaintiff perceived his physical demand level as below sedentary. (*Id.*)

On July 19, 2016, Plaintiff told Dr. Mkrdichian that he was still having low back pain, left leg pain with spasticity and numbness and tingling in his foot, leaving him unable to stand or sit for more than 15 minutes without pain and causing a lot of family trouble and depression. (R. 766.) Dr. Mkrdichian acknowledged that Plaintiff had "significant residual symptoms" and recommended that Plaintiff pursue chronic pain management rather than neurosurgical treatment because testing was negative for radiculopathy or neuropathy. (*Id.*) For pain, Plaintiff took Norco and gabapentin twice a day, valium three times a day, and a muscle relaxant. (*Id.*) Dr. Mkrdichian

noted that the FCE placed Plaintiff in sedentary to light abilities, and he recommended Plaintiff "be on disability as per functional capacity evaluation recommendations," with which Plaintiff was "in total agreement." (*Id.*)

On October 19, 2016, Plaintiff was brought to the emergency department "in an active blackout state" after he attempted suicide by taking alcohol and multiple pills including muscle relaxants, stool softeners and antibiotics. (R. 613, 672.) Plaintiff told his treatment providers: "I'm just tired. I've lost everything and I just want to die." (R. 634.) Plaintiff was admitted to a closed psychiatric unit for 48 hours for evaluation, during which medical professionals determined that his "problems seem[ed] to be externally related, to relationship issues with wife" but that both Plaintiff and his wife were "in total denial of any problems." (R. 672, 691.) Plaintiff was discharged on October 21 with a diagnosis of severe adjustment disorder with depression, and counseling was recommended. (R. 691.)

In November 2016, Plaintiff received physical therapy for his lower back and left leg pain. (R. 720.) In spring 2017, Plaintiff again sought physical therapy; although Plaintiff sought treatment primarily for neck pain at that time, his physical therapist opined that his neck pain was correlated to the intensity of his low back and left leg pain. (R. 559-60, 566, 597.)

On June 5, 2017, Plaintiff returned to Dr. Mkrdichian with reports of ongoing left-sided numbness and tingling and severe lower back and leg pain, which had worsened three weeks earlier, despite continuing to take Norco, gabapentin, Flexeril, amitriptyline and valium. (R. 769-70, 772.) On examination, Dr. Mkrdichian observed a slight paraspinal muscle spasm and some tenderness as well as moderate limitation of Plaintiff's range of motion. (R. 773.) Dr. Mkrdichian recommended a spine X-ray and MRI to investigate Plaintiff's "recurrent radiculopathy" in the lower spinal region; imaging showed only mild degenerative findings. (R. 773, 801-04). On July

4

3, 2017, Dr. Mkrdichian renewed Plaintiff's prescriptions for pain medication and recommended Plaintiff consult with pain management specialists. (R. 805-07.)

## II. Evidentiary Hearing

On July 26, 2017, Plaintiff and his attorney appeared at a hearing before the ALJ. Plaintiff testified that his pain had not improved since his back surgery, and he would be dealing with the pain for the rest of his life because his doctor said there was no further surgical option. (R. 60.) Plaintiff testified that he could sit for five to six minutes before needing to stand and stretch for a few minutes; during the hearing, he switched between sitting and standing due to pain in his left leg and back, despite taking Norco before the hearing. (R. 60-61.) Plaintiff testified that the pain also affected him mentally, leading to his suicide attempt and trouble with his wife. (R. 62.)

A medical expert ("ME"), Ashok Jilhewar, M.D., testified next based on the record and Plaintiff's testimony. Dr. Jilhewar opined that from May 1, 2015, the date of Plaintiff's surgery, through July 19, 2016, Plaintiff was disabled under Listing 1.04A, disorders of the spine, due to Plaintiff's consistent complaints of moderate to severe pain and his treatment for it, including gabapentin and narcotics. (R. 56-57, 63.) As of July 20, 2016, Dr. Jilhewar opined that Plaintiff could perform sedentary work because he "accept[ed]" Dr. Mkrdichian's July 19, 2016 clinical opinion, and although Dr. Jilhewar "did not see any improvement" in Plaintiff's symptomology as of July 20, 2016, EMG and radiographic test results were unremarkable "until the recurrence of lumbar radiculopathy in June 2017." (R. 57-59, 64-65.)

The ALJ then presented a hypothetical to the vocational expert ("VE") of an individual who could perform sedentary work with additional physical and mental limitations. (R. 69.) The VE testified that a significant number of jobs were available for that individual to perform. (R. 70.)

5

**III.    ALJ's Decision**

On December 15, 2017, the ALJ issued a written opinion finding Plaintiff was disabled within the meaning of the Social Security Act from May 1, 2015 through July 19, 2016, but that Plaintiff's disability ended on July 20, 2016, because "medical improvement occurred that is related to the ability to work, and the claimant has been able to perform substantial gainful activity from that date through the date of th[e] decision." (R. 24-25.)

For the period May 1, 2015 through July 19, 2016, the ALJ found Plaintiff had the severe impairments of status post L4-L5 microdiscectomy,[5] L4-L5 disc herniation and depression, and the ALJ accepted Dr. Jilhewar's opinion that the evidence showed the severity of Plaintiff's physical impairments medically equaled the criteria of Listing 1.04A during this period. (R. 28-29.) Under Listing 1.04A, individuals will be found disabled if they have disorders of the spine resulting in compromise of a nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . ." 20 C.F.R. 404, Subpt. P, App. 1, § 1.04.

The ALJ found that Plaintiff's mental impairment of depression did not meet or medically equal a Listing, which requires a claimant's mental impairment to cause at least two marked limitations or one extreme limitation in the "paragraph B criteria." (R. 30-31.) The ALJ found Plaintiff had moderate limitation in concentrating, persisting or maintaining pace, mild limitation in understanding, remembering or applying information and adapting or managing oneself, and no limitation in interacting with others. (R. 30.) In making this determination, the ALJ relied on the state agency mental health examination from February 2016 and a September 2015 self-report of

---

[5]L4-L5 refers to vertebrae in the lower back.

6

Plaintiff's functional limitations. (*Id.*) The ALJ reasoned, in part, that "[a]lthough [Plaintiff] reported that he has trouble getting along with others due to anger issues, he is able to live with his wife and three children and demonstrated appropriate behavior during a consultative examination." (*Id.*) In addition, although Plaintiff "reported difficulty with personal care, . . . he attributed these problems mainly to physical limitations." (*Id.*)

Beginning on July 20, 2016, the ALJ found that Plaintiff's physical impairments no longer equaled a Listing based on "objective testing." (R. 29). As of that date, the ALJ found Plaintiff had the RFC to perform sedentary work with some additional postural and mental limitations. (R. 31.)

The ALJ explained that he adopted the ME's opinion of Plaintiff's RFC because it was consistent with the June 2016 FCE and Plaintiff's treating neurosurgeon's assessment, as well as Plaintiff's "limited" or "minimal" treatment and "minimal" or "mild" imaging findings. (R. 32-33.) The ALJ gave "significant weight" to the FCE, "which show[ed] that while the claimant ha[d] significantly decreased functional abilities due to pain, he remained capable of performing sedentary to light work." (R. 32.) In addition, the ALJ gave "great weight" to Dr. Mkrdichian, who the ALJ found adopted the FCE's determination that Plaintiff was capable of performing sedentary to light activities. (R. 30, 32.)

The ALJ also found that Plaintiff declined to follow Dr. Mkrdichian's recommendation that he seek treatment such as epidural injections to help him with chronic pain management. (R. 32.) The ALJ recognized that Plaintiff received physical therapy in spring 2017, but he found that was primarily for Plaintiff's neck complaints, which improved with therapy. (R. 32.) The ALJ also acknowledged Plaintiff's complaints of severe leg pain in June 2017, but noted that despite some limited range of motion, Plaintiff could toe and heel walk within normal limits. (*Id.*)

7

Regarding mental impairments, the ALJ recognized that Plaintiff was hospitalized for 48 hours in October 2016 after an intentional overdose on medications. (R. 33.) However, the ALJ noted that Plaintiff performed adequately during the state agency consultative examination, and he had not received significant specialized treatment for his mental impairments. (*Id*.) Therefore, the ALJ found that "the record support[ed] some limitations due to depression, but the claimant remain[ed] capable of performing simple, routine, and low-stress tasks." (*Id.*)

## IV. Post-Decision Evidence

Plaintiff sought review of the ALJ's decision and submitted additional evidence to the Appeals Council. Some of the evidence preceded the date of the ALJ's opinion: a January 2017 letter opining Plaintiff had carpal tunnel syndrome and a July 2017 referral for medical marijuana. (R. 14-15.) The Appeals Council determined that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. 2.) In addition, Plaintiff submitted evidence post-dating the ALJ's decision, including a February 8, 2018 letter from Jonathan Younan, M.D., stating that Plaintiff had been under his care since May 2017 for issues including chronic pain, degenerative disc disease, herniated disc and arthritis, and that Plaintiff was "active with pain clinic, and physical therapy, [and] because of his clinical condition he is not able to go back to work." (R. 16.) The Appeals Council found this "evidence does not relate to the period at issue. Therefore, it does not affect the decision" about whether Plaintiff was disabled beginning on or before December 15, 2017, the date of the ALJ opinion. (R. 2.)

## V. Analysis

Plaintiff is representing himself in this matter without the assistance of an attorney. The Court is "obligated to liberally construe a *pro se* plaintiff's pleadings," and "will address any cogent arguments we are able to discern" in his Court filings. *Parker v. Four Seasons Hotels*, *Ltd*.,

845 F.3d 807, 811 (7th Cir. 2017). In Plaintiff's "opening brief," he contends that the record "contains overwhelming evidence of both physical and mental disability." (D.E. 26: Pl.'s Br. at 7.) Plaintiff wrote that he had chronic pain in his lower back, left leg, right hand and right shoulder, which he treated with surgery in May 2015, December 2018 and January 2019, and for which he took multiple daily pain medications "to function normally." (*Id.*) Plaintiff further wrote that his impairments have caused him strife and grief, and he has "lost" his family because he has not been able to drive, hold a job or help around the house since his May 2015 surgery. (*Id.* at 7-8; D.E. 31: Pl.'s Reply.) The Court has considered all of Plaintiff's federal court filings and agrees with Plaintiff that the ALJ's decision must be reversed and remanded.

### A. Standard of Review

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk*, 923 F.3d at 496 (internal citations and quotations omitted). "An ALJ need not address every piece of evidence," but must "build an accurate and logical bridge" between the evidence and his conclusion, *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017), and he "may not ignore an entire line of evidence contrary to [his] ruling." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020).

### B. ALJ's Inadequate Assessment of Plaintiff's Pain

The ALJ determined that Plaintiff underwent medical improvement as of July 20, 2016 based on the June 2016 FCE, the ME's opinion, Plaintiff's "limited" or "minimal" treatment, unremarkable "objective" testing, and Dr. Mkrdichian's findings. (R. 30, 32-33.) This determination requires remand for several reasons.

9

First, the ALJ's determination that Plaintiff's treatment was limited or minimal was not supported by substantial evidence. To the contrary, Plaintiff's "pain complaints were consistent with [his] prescription[s]" for multiple narcotic and nerve pain medications, which are "not intended for mild or acute pain." *Gerstner v. Berryhill*, 879 F.3d 257, 264-65 (7th Cir. 2018). Indeed, the 2015 surgery and these heavy pain medications were ineffective at decisively improving Plaintiff's chronic pain. The ALJ failed to acknowledge that Plaintiff's regimen of multiple serious pain medications, including muscle relaxants, narcotics, and nerve pain medication, continued unabated through the alleged medical improvement date of July 20, 2016. In addition, the ALJ erred in discounting Plaintiff's treatment based on his decision not to seek additional epidural steroid injections after February 2016. (R. 32.) "[A]n ALJ must not draw inferences about a claimant's lack of treatment without exploring the reasons for the inaction." *Ray v. Berryhill*, 915 F.3d 486, 490-91 (7th Cir. 2019). Here, the ALJ never explored why Plaintiff was unwilling to pursue additional epidural injections when he was willing to undergo surgery and take serious pain medications to treat his pain. These errors require remand.

Second, the ALJ erred by relying on the lack of an objective source of Plaintiff's pain to determine that Plaintiff experienced medical improvement. Although "a lack of objective support from physical examinations and test results is relevant," it is well-settled that "an ALJ may not discredit pain complaints solely because they lack objective corroboration." *Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018). Indeed, despite not finding an objective cause of Plaintiff's pain, Dr. Mkrdichian opined that Plaintiff's back and leg pain were "chronic" and needed long term pain management. This opinion supports rather than undermines Plaintiff's allegations that his symptoms did not improve as of July 20, 2016. *See id*. at 775 (holding that claimant's alleged pain symptoms were supported by his doctor's consistent classification of his back pain as chronic

10

or incurable.) Even the ME acknowledged that despite unremarkable EMG and radiographic test results, Dr. Mkrdichian's notes did not show "any improvement" in Plaintiff's symptomology after July 19, 2016, and, indeed, saw a "recurrence of lumbar radiculopathy in June 2017." (R. 59.)

Third, the ALJ's analysis of Dr. Mkrdichian's findings and opinions was inadequate. The ALJ found that Dr. Mkrdichian adopted the June 2016 FCE's determination that Plaintiff was capable of performing sedentary to light activities. (R. 30, 32.) However, Dr. Mkrdichian's opinion on the FCE's conclusions is not so clear. In his July 2016 report, Dr. Mkrdichian acknowledged the FCE placed Plaintiff in sedentary to light abilities, but Dr. Mkrdichian opined that Plaintiff had "significant residual symptoms" of pain that would need chronic pain management. (R. 766.) In addition, Dr. Mkrdichian wrote that he recommended Plaintiff "be on disability as per functional capacity evaluation recommendations," with which Plaintiff was "in total agreement." (*Id.*) However, the FCE did not recommend Plaintiff "be on disability," and the Court suspects Plaintiff would not have agreed with a recommendation that he perform sedentary to light work. On remand, the ALJ should address these apparent inconsistent interpretations of Dr. Mkrdichian's opinion on the FCE findings.

In addition, the ALJ did not adequately explain why he discounted evidence of Plaintiff's severe leg pain at Plaintiff's visit with Dr. Mkrdichian in June 2017. ALJ analyses should not include "impermissible cherry-picking—highlighting facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020). At the June 2017 visit, Plaintiff complained of severe leg pain despite continuing to take Norco, gabapentin, Flexeril, amitriptyline and valium, and Dr. Mkrdichian's examination showed Plaintiff had some tenderness and moderate limitation in his range of motion. (R. 773.) However, the ALJ appeared to discount this evidence simply because Plaintiff could toe and heel walk within normal

11

limits. (R. 32.) This conclusion raises the specter that the ALJ cherry-picked Dr. Mkrdichian's findings. On remand, the ALJ should more fully assess Dr. Mkrdichian's opinions.

### C. Additional Issues to Consider on Remand

Although the Court remands this case on the bases discussed above, the Court recommends the ALJ also address the following issues on remand.

#### 1. Plaintiff's Mental Impairments

The ALJ determined that the record supported only "some limitations due to depression" because Plaintiff performed adequately and "demonstrated appropriate behavior" during the February 2016 state agency examination, and he had not received extensive mental health treatment. (R. 30) Although the ALJ acknowledged that Plaintiff was hospitalized in October 2016 due to an intentional overdose on medications (R. 33), the ALJ did not appear to consider Plaintiff's attempted suicide -- and the concurrent medical opinions that Plaintiff was in denial about his mental health problems -- in determining the extent of Plaintiff's mental health impairments. On remand, the ALJ should further analyze Plaintiff's mental health impairments.

#### 2. Evidence Post-Dating the ALJ's Opinion

The Appeals Council held that medical records Plaintiff submitted that post-dated the ALJ's decision did "not relate to the period at issue" and thus did "not affect the decision." (R. 1-2.) The Appeals Council must consider "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision," if the claimant shows "good cause" for not submitting the evidence earlier and "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5), (b). The February 8, 2018 letter that Plaintiff submitted from Dr. Younan may meet this standard. Dr. Younan wrote that Plaintiff had been under his care since May 2017 -- before the date of the ALJ's opinion -- for

12

impairments including chronic pain, degenerative disc disease, herniated disc and arthritis, and that Plaintiff was "active with pain clinic, and physical therapy, [and] because of his clinical condition he is not able to go back to work." (R. 16.) The Seventh Circuit has found evidence that post-dates an ALJ's decision but confirms symptoms or diagnoses relating to the period before the decision may satisfy the requirements of 20 C.F.R. § 404.970(b). *See*, *e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012); *Stepp v. Colvin*, 795 F.3d 711, 725-26 (7th Cir. 2015). Thus, the ALJ should consider addressing this evidence on remand.[6]

## CONCLUSION

For the foregoing reasons, we grant Plaintiff's request for remand (D.E. 26) and deny the Commissioner's motion to affirm. (D.E.27.)

ENTER:

_____

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: July 14, 2020**

---

[6] Plaintiff also submitted additional medical records to this Court, most notably, a March 2019 medical report from neurosurgeon Andrew K. Johnson, M.D., indicating that Plaintiff underwent two surgeries on his cervical spine (neck) after the ALJ's opinion: a total disc arthroplasty (replacement) on December 21, 2018 and an anterior cervical discectomy and fusion on January 24, 2019. (D.E. 24.) Unlike the evidence Plaintiff submitted to the Appeals Council, this evidence does not appear to relate to the time period preceding the ALJ's December 2017 opinion. That said, Plaintiff has the right to file a new application seeking disability benefits beginning on a date of the ALJ's opinion.

13